**Cheston GOOD, Appellant,**

v.

**The DOW CHEMICAL COMPANY,**
**Appellee.**

**No. 01–96–00310–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 8, 1997.

Marion D. Allen, Angleton, for appellant.

Randy E. Moore, Lake Jackson, for appellee.

Before SCHNEIDER, C.J., and MIRABAL and BASS,* JJ.

## OPINION

MARGARET GARNER MIRABAL, Justice.

This is an appeal of a summary judgment for the defendant in a personal injury case involving premise liability and employer liability issues. We affirm.

Plaintiff Cheston Good was a pipefitter apprentice employed by Gulf States, Inc. Gulf States constructed a pipe rack at a hydrocarbon plant being built by defendant Dow Chemical Company. When Gulf States started the project, there was empty land at the location where the pipe rack was to be built. Under the contract between Gulf States and Dow, Gulf States provided all materials, including the pipe and pipe shoes, for the project. Gulf States was an independent contractor.

Good's injury occurred while he was up in the pipe rack. Some pipe had rolled over in the pipe rack above Good. He was told to move up to the next level and set the pipe back on its shoes. To get to the next level, Good and his coworker had to first descend the rack to reach a "jig lift" that took workers from one level to the other. As Good was crawling over some pipe, a piece of pipe rolled over, pinching his right ankle between

---

* The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

a 24–inch pipe and the shoe of a 6–inch pipe, causing injury. Good filed suit against Dow, alleging:

1. Dow was the owner of the premises, had control of the premises, and owed Good a duty to use reasonable care to keep the premises in a safe condition.

2. Although Good was an employee of Gulf States, Dow retained control over the work to be done by Gulf States and its employees.

3. Dow was negligent (a) in failing to specify safety procedures for Good to follow when encountering a known dangerous condition; (b) in failing to require the use of safety devices that Dow knew would prevent pipe rollovers; (c) in allowing Good to work in an unsafe environment when Dow should have known the manner in which the work was being done was unsafe; (d) in failing to reasonably exercise contractually retained supervisory control over the work to be done.

4. Additionally, Good alleged that Dow was an "employer" as defined by TEX.REV. CIV.STAT.ANN. art. 5182a,[1] and as such, Dow had a statutory duty to Good to furnish and maintain employment and a place of employment that was reasonably safe and healthful, and Dow breached that statutory duty.

Dow moved for summary judgment, with supporting evidence, asserting as grounds the following:

1. Regarding negligence based on premises liability, as a matter of law Good was an employee of an independent contractor, Gulf States. The duty owed by Dow to employees of an independent contractor was the duty to use reasonable care to keep the premises under its control in a safe condition. Dow did not breach that duty as a matter of law.

2. Regarding alleged common law and statutory liability based on a right to control, the summary judgment evidence establishes that Dow did not retain the right to control, and did not exercise control over, the work of Gulf States and its employees; therefore, Dow was not liable as an "employer," and breached no duty.

Good filed a response to the motion for summary judgment. The trial court granted summary judgment for Dow.

In his first point of error, Good asserts the trial court erred in granting summary judgment because Dow breached its statutory duty to provide and maintain employment and a place of employment that is reasonably safe and healthful. Good relies on the following provisions:[2]

Every employer shall furnish and maintain employment and *a place of employment* which shall be reasonably safe and healthful for employees. Every employer shall install, maintain, and use such methods, processes, devices, and safeguards ... as are reasonably necessary to protect the life, health, and safety of such employees, and shall do every other thing reasonably necessary to render safe such employment and *place of employment.*"

TEX.REV.CIV.STAT.ANN. art. 5182a, § 3 (emphasis added).

Employer means an individual, firm, corporation, stock association, agent, representative, foreman, or any other person who has *control* or *custody* of any employment, *place of employment* or employee ...

TEX.REV.CIV.STAT.ANN. art. 5182a § 2(5) (Vernon 1987) (emphasis added).

Employee means an individual who works for an employer for wages, compensation, or other things of value.

TEX.REV.CIV.STAT.ANN. art. 5182a § 2(6) (Vernon 1987).

Place of Employment is defined as "every place where, either temporarily or permanently, any trade, industry, or business is

---

1. Repealed by act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(c), 1995 Tex.Gen.Laws 458, 657, and codified at TEX.LABOR CODE ANN. §§ 411.101–411.110 (Vernon 1996). The codification constituted no substantive change in the law. *See* TEX.GOV'T CODE ANN. § 323.007 (Vernon 1988).

2. As previously noted, TEX.REV.CIV.STAT.ANN. art. 5182a has been recodified in the Texas Labor Code.

carried on or any employee is *directly* or *indirectly* employed by another for direct or indirect gain or profit.

TEX.REV.CIV.STAT.ANN. art. 5182a § 2(9) (Vernon 1987) (emphasis added).

Good argues that Dow was an "employer," Good was an "employee," and the pipe rack was a "place of employment" under the statute. It is Good's position that the pipe shoe on the pipe that came loose was either too small for the pipe, or it was not welded onto the pipe, causing an unsafe "place of employment" that Dow was responsible for.

■ It is uncontroverted that the place of employment that Dow provided to Gulf States and its employees was empty land. Gulf States was to build a structure on the land. As discussed under point of error two, Gulf States was an independent contractor and Dow did not exercise, or retain the right to exercise, control over the construction project details involved in this case. The "unsafe place of employment" Good complains about was the responsibility of Gulf States as the "employer" under the statute, as a matter of law.

Accordingly, we overrule point of error one.

In his second point of error, Good asserts the trial court erred in granting summary judgment on the duty of care issue because Dow had a common-law duty to supervise the manner in which the work was performed by virtue of the fact that it retained contractual control over the manner in which the work of its independent contractor was performed.

■ An owner of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). However, ordinarily, an owner or occupier of land does not have a duty to ensure that an independent contractor performs its work in a safe manner. *Redinger*, 689 S.W.2d at 418; *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976). In an activity conducted by and under the control of an independent contractor, where danger arises out of the activity staff, it is the independent contractor's responsibility or duty to perform work in a safe manner, and not that of the owner of the premises. *Redinger*, 689 S.W.2d at 418; *Abalos*, 544 S.W.2d at 631.

■ There is an exception: When the owner or occupier of land exercises some control over the work of an independent contractor, he may be liable unless he exercises reasonable care in supervising the contractor's activity. *Redinger*, 689 S.W.2d at 418. In *Redinger* the supreme court adopted the RESTATEMENT (SECOND) OF TORTS § 414 (1977), which states:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Redinger*, 689 S.W.2d at 418.

■ If a right of control has a contractual basis, the fact that no actual control was exercised will not absolve the premises owner of liability. It is the right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner. *Pollard v. Missouri Pac. R.R.*, 759 S.W.2d 670, 671 (Tex.1988).

■ The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Redinger*, 689 S.W.2d at 418 (citing RESTATEMENT (SECOND) OF TORTS § 414, cmt. c (1965)). Retention of "only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or to others," may not subject the employer to liability under agency principles, but he may be liable unless he exercises the supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others. *Id.*

■ As summary judgment evidence, Dow cited to the construction contract between Dow and Gulf States, Inc. which sets out their respective responsibilities:

*Responsibilities*—CONTRACTOR shall be an independent contractor under this Con-

tract and shall assume all of the rights, obligations and liabilities, applicable to it as such independent contractor hereunder. Any provisions of this Contract which may appear to give DOW the right to direct CONTRACTOR as to details of doing the work herein covered or to exercise a measure of control over the work shall be deemed to mean that CONTRACTOR shall follow the desires of DOW in the results of the work only. Neither DOW nor CONTRACTOR shall have control over the other party with respect to its hours, times, employment, etc. Furthermore, under no circumstances shall either DOW or CONTRACTOR be deemed an employee of the other nor shall either party act as an agent of the other party. Any and all joint venture or partnership status is hereby expressly denied and all the parties expressly state that they have not formed either expressly or impliedly a joint venture or partnership.

Dow also cited to the affidavits of Gulf States's general foreman on the project, Billy Bender, and Good's immediate supervisor, Kim Kohn, which stated that Kohn received all of his instructions regarding the details of the work from either Bender or from Bender's supervisor, Charlie Lyster. Dow also relied on the deposition of Charlie Lyster to support its position that Good's work activities were at all times subject to the sole direction, control and supervision of Gulf States and its employees while Good was performing work for Gulf States on Dow's premises. In his deposition, Lyster testified that Gulf States, alone, made the decisions on how to construct or build the project to get it to meet Dow's final plans and specifications requirements.

Further, Dow pointed to section 22.01 of the construction contract to support its position that Gulf States was responsible for taking precautions for the safety of its employees working on the project. Section 22.01 states:

*Safety*—CONTRACTOR shall properly protect the property of DOW and adjacent property. CONTRACTOR shall take all necessary precautions for the safety of the employees on the work and shall comply with all safety rules and regulations of DOW as set forth in the Safety and Loss prevention Manual for CONTRACTORS and all applicable provisions of the federal, state and municipal safety laws and building codes to prevent accidents or injuries to persons or damage to property on or about or adjacent to the premises where work is being performed.

Dow contends that the summary judgment evidence conclusively established that it retained no right to direct Gulf States or its employees as to the details of their work; that it retained no right to, and did not, exercise any measure of control over Gulf States or Good's work; that no exception exists; and that Dow breached no duty to Good as a matter of law.

In Good's response to Dow's motion for summary judgment, he argued that Dow had a contractual duty to exercise reasonable care because Dow retained some control over Gulf States's work as an independent contractor. Good cited language in the construction contract, and in the "Job Specifications" and the "Safety and Loss Prevention Manual for Contractors" that were incorporated into and made a part of the construction contract.

The Job Specifications state that:

The work shall be performed in a manner to ensure maximum safety for people, facilities and equipment. Contractor's and Subcontractor's personnel shall be familiar with and shall rigidly comply with the rules and procedures in the "Safety and Loss Prevention Manual for Contractors."

Good also referred to the deposition testimony of Joseph Hariston, in which Hariston stated that this language was included to ensure that the work was performed in a safe manner. He testified that Gulf States was required by the contract to follow Dow's safety rules, unless a variance was granted, and that Dow personnel monitored the contractors to assure safety rule compliance. Both Hariston and Gerald Roberts, the Dow representatives responsible for monitoring Gulf States's compliance with the safety requirements of the contract, testified that safety was as much of a contractual condition as the work itself. Since the area Good

worked in was considered a construction area, a daily safe work permit was required. Dow inspected the worksite daily to ensure the job was safe, and Gulf States could not resume work without a safe work permit.

Good stressed that Dow retained the right to require compliance with its safety rules, and the right to terminate the contract for violation of Dow's safety rules and regulations.

We do not agree with Good that by including "The Safety and Loss Prevention Manual for Contractors" in its contract with Gulf States, Dow retained supervisory control over the details of the erection of the pipe rack so as to subject it to liability under the *Redinger* analysis. Good points to no safety manual provision that dictates how and when pipe shoes should be welded to the pipe, or how and when the pipe should be placed on the racks. Further, Good does not point out, nor does the record reflect any safe work permit issuance procedure that indicates Dow retained any control over the methods by which Gulf States erected the pipe rack. Safe work permit issuance procedures as reflected in the "Dow Texas Operations: Administrative Safety Manual for Service Maintenance and Construction" show only that a Dow representative and a contractor representative had to survey the work area before work began to insure, for example, that individuals had an understanding of potential chemical hazards, emergency procedures, required protective equipment, restraining devices and emergency equipment, and potential hazards in the area. The procedures do not address the details of the erection of the pipe rack.

Further, while Dow personnel may have been on site to observe compliance with safety procedures, Dow's retention of control did not rise to the level of control which was held to create a duty in *Pollard*, 759 S.W.2d at 671 and *Kirby Forest v. Kirkland*, 772 S.W.2d 226, 229 (Tex.App.—Houston [14th Dist.] 1989, writ denied). In *Pollard*, the court found that MOPAC contractually retained control over the completion time, authority to specify which poles the independent contractor was to remove, and control over access and storage of materials needed to perform the work on MOPAC's right of way. *Pollard*, 759 S.W.2d at 671. Similarly, in *Kirby*, the court found that the owner had retained the right to specify exactly how the trees were to be cut, to select the harvest areas, to control when and where the woodcutters worked, and to designate the specific trees to be cut. *Kirby*, 772 S.W.2d at 229.

In this case, Dow retained no such rights in its contract with Gulf States. Gulf States foreman Charlie Lyster testified that any choices made during the construction phase to rest the pipes on the shoes before completion of the project were made solely by Gulf States. Good received all of his instructions regarding the pipefitting job from his immediate Gulf States supervisor or from other Gulf States supervisors.

In *Davis v. R. Sanders & Assoc. Custom Builders*, 891 S.W.2d 779, 782 (Tex.App.—Texarkana 1995, no writ), the contract required the subcontractor to perform all work "in accordance with applicable Federal and State safety regulations." Refusing to find that such a provision indicated a retention of control by the owner, the court likened such a provision to a requirement that the work be performed in a good and workmanlike manner, which pertained to the *results* of the work and not the *details* of performance. *Id.*

We conclude that, because Dow did not exercise, or retain the right to exercise, control over the manner in which the pipe rack was constructed, the trial court properly granted summary judgment. Accordingly, we overrule point of error two.

We affirm the judgment.