Jonathan DeLuna v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-290-CR

Â Â Â Â Â JOHNATHAN DELUNA,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 22844CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
DISSENTING OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â The majority opinion accurately sets out the facts and the law. However, I would not reverse
and remand the matter for the failure to include the lesser included offense of murder, as opposed
to capital murder, in the charge to the jury. This is because I can find no evidence in the record
that indicates that DeLuna did not intend to commit robbery at the time he murdered Smith.
Â Â Â Â Â Â The record is clear that DeLuna thought Smith owed him money. The record is also clear that
Smith did not agree that he owed DeLuna money. They had several arguments about the disputed
debt. The evidence shows that DeLuna went to Smithâs home to collect the debt that DeLuna
believed was owed him. This collection would be done by force if necessary, since he carried a
nine millimeter pistol with him and an assistant. This type of âdebt collectionâ fits the definition
of robbery. DeLuna went to Smithâs home to unlawfully appropriate property from Smith to
satisfy a debt DeLuna believed was owed. In the course of collecting this debt, Smith was
murdered.
Â Â Â Â Â Â The majority imposes on the State the burden to show intent to take the specific property, the
truck, at the time of the murder. The criminal code is not so narrow. The only intent necessary,
is the intent to take property from the victim. It does not matter that the specific property taken
was not selected until after the victim is murdered. Even though the charge identified the truck
as the property ultimately taken, the jury is not limited to determining that DeLuna had to have
the intent to take the truck at the time of the murder.
Â Â Â Â Â Â Further, the majority relies upon an inference the jury could have drawn from the evidence,
that DeLuna went to Smith only to collect on a debt, not to kill him. A similar inference could
be argued to exist in any case where intent is an element of the crime. It could almost always be
inferred that the culpable intent was lacking, thus entitling the criminal defendant to a charge on
the lesser included offense in virtually every situation. More is required. There must be some
specific, objective evidence in the record that the criminal defendant can identify for the court, that
if believed, would cause the defendant to be guilty of only the lesser included offense.
Â Â Â Â Â Â There is no objective evidence that DeLuna intended to only murder Smith but not to take
property from him. Therefore, DeLuna is not entitled to have the lesser included offense of
murder included in the charge. I would not reverse and remand the judgment on this issue.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Dissenting opinion delivered and filed August 18, 1999
Do not publish



ont-family:"Verdana","sans-serif"'>
However, this special
exception was not brought to the trial courts attention and the record does
not indicate a ruling on the exception.Â  See In the Estate of Tyner, 292
S.W.3d 179, 185 (Tex. App.ÂTyler 2009, no pet.); see also Rosas v. Hatz, 147 S.W.3d 560, 563 (Tex. App.ÂWaco
2004, no pet.).Â  Because Ibarra
and Torres failed to obtain an explicit ruling on this special exception, it is
not preserved for appellate review.[2]Â 
See Tyner, 292 S.W.3d at 185; see also Rosas, 147 S.W.3d at 563.

Second, Ibarra and Torres argue that the
motions failed to address their negligent undertaking, negligent activity, and
exemplary damages/gross negligence claims.[3]Â Â 
When the motions were filed on May 12, IbarraÂs and TorresÂs live pleadings
alleged premises liability, negligence, negligence per se, negligent hiring,
and gross negligence.Â  On June 4, Ibarra and Torres filed a fourth amended
petition also alleging negligent undertaking and negligent activity.Â  The trial
court considered the motions on June 9.

The fourth
amended petition was timely filed, having been mailed May 29, on or before the
last day for filing.Â  See Tex. R.
Civ. P. 5; see also Beard
v. Beard, 49 S.W.3d 40,
54 (Tex. App.ÂWaco 2001, pet. denied).Â  The
order indicates that the trial court considered the Âpleadings timely filed;Â
there is no claim of surprise or prejudice.Â  See Goswami v. Metro. Sav. & Loan
Ass'n, 751
S.W.2d 487, 490-91 (Tex. 1988); see also Spakes v. Weber, No.
10-08-00313-CV, 2010 Tex.
App. LEXIS 274, at *16-18 (Tex. App.ÂWaco Jan. 13, 2010, pet. filed) (mem.
op.).Â Â We presume
the trial court considered the amended
petition.

The trial courtÂs order dismissed Âall
claimsÂ asserted by Ibarra and Torres.Â  However, a trial
court may not grant summary
judgment on a claim not addressed in the summary-judgment motion. Â See Chessher v. Sw. Bell Tel. Co., 658 S.W.2d 563, 564 (Tex.
1983) (per curiam); see also Roehrs v. FSI Holdings, Inc., 246 S.W.3d 796, 810 (Tex. App.ÂDallas
2008, pet. denied); Espeche v. Ritzell, 123 S.W.3d 657, 663 (Tex. App.ÂHouston
[14th Dist.] 2003, pet. denied); Lehmann, v. Har-Con Corp., 39
S.W.3d 191, 205 (Tex. 2001).Â  In both motions, the Hines Appellees
argued that they owed no duty to Ibarra.Â  Negligent undertaking, negligent
activity, and gross negligence all require a showing of duty.Â  See GE v. Moritz, 257 S.W.3d 211, 214-16 (Tex. 2008)
(negligent activity); see also Torrington Co. v. Stutzman, 46 S.W.3d
829, 837-39 (Tex. 2000) (negligent undertaking); RT Realty, L.P. v. Tex.
Utils. Elec. Co., 181 S.W.3d 905, 914 (Tex. App.ÂDallas 2006, no pet.)
(gross negligence).Â  The
summary judgment motions are Âsufficiently broad to encompass [the] later-filed
claims;Â thus, the Hines Appellees were not required to amend their motions. Â Espeche, 123 S.W.3d at 664; see Dubose v.
WorkerÂs Med., P.A., 117 S.W.3d 916, 922 (Tex. App.ÂHouston [14th Dist.]
2003, no pet.) (Â[S]ummary
judgment is proper where a defendant has conclusively disproven an element
central to all causes of action or an unaddressed cause of action derivative of
the addressed causes of action.Â).Â  The judgment does not grant greater relief than
requested.

Ibarra and Torres also objected to evidence
attached to the traditional motion.Â  They did not obtain a ruling on these
objections.Â  Â[T]he granting of a summary-judgment motion does not necessarily
provide an implicit ruling that either sustains or overrules objections to the
summary-judgment evidence.ÂÂ  Allen
v. Albin, 97 S.W.3d
655, 663 (Tex. App.ÂWaco 2002, no pet.).Â  Objections
to the form of summary-judgment evidence are preserved for appellate review
only if those objections are made and ruled on in the trial court.Â  See Choctaw Props., L.L.C. v. Aledo I.S.D., 127 S.W.3d 235, 241 (Tex. App.ÂWaco
2003, no pet.); Trusty
v. Strayhorn, 87 S.W.3d 756, 762 (Tex. App.ÂTexarkana 2002, no pet.).Â 
Substantive objections do not require a written ruling, and the objection may
be raised for the first time on appeal.Â  See Choctaw
Props., 127 S.W.3d at 241.Â  Thus, we may consider only those objections challenging
the substance of the Hines AppelleesÂ evidence.Â  See Anderson v. Limestone County, No.
10-07-00174-CV, 2008 Tex. App. LEXIS 5041, at
*5Â (Tex. App.ÂWaco July 2, 2008, pet. denied) (mem. op.).

Ibarra and Torres objected that A.W.
HinesÂs affidavit: (1) omitted a statement that the facts contained therein are
within his Âpersonal knowledgeÂ and Âtrue and correct;Â (2) set forth no facts
from which personal knowledge could be inferred; (3) contained conclusory
statements; (4) contained subjective opinions; (5) constituted self-serving
testimony; (6) was based on hearsay; and (7) failed to Âpositively and
unqualifiedlyÂ represent the truth of the facts.Â  The first, second, fifth,
sixth, and seventh objections are defects of form that are not preserved for
appellate review.Â  See Choctaw
Props., 127 S.W.3d at 241; see also Youngblood
v. U.S. Silica Co., 130
S.W.3d 461, 468 (Tex. App.ÂTexarkana 2004, pet. denied); Stewart v. Sanmina
Tex., L.P., 156 S.W.3d 198, 207 (Tex. App.ÂDallas 2005, no pet.). Â The remaining objections are
substantive and may be considered for the first time on appeal.Â  See Choctaw, 127 S.W.3d at 241; see also Willis v. Nucor Corp., 282 S.W.3d 536,Â 548Â (Tex.
App.ÂWaco 2008, no pet.).

Ibarra and Torres objected to several excerpts
from A.W.Âs affidavit as conclusory and subjective.Â  However, the record
contains other evidence, including A.W.Âs deposition, IbarraÂs deposition, Billy
MossÂs deposition, and interrogatory responses, which conveys the same or
similar information.Â  Thus, any error in the consideration of the affidavit
would be harmless.Â  See Aguillera
v. John G. & Marie Stella Kenedy MemÂl Found., 162 S.W.3d 689, 697 (Tex. App.ÂCorpus
Christi 2005, pet. denied) (Late-filed
evidence was Âmerely cumulative of other evidence that was timely filed.Â); see also AT&T Corp. v. Sw.
Bell Tel. Co., No.
05-99-00186-CV, 2000 Tex.
App. LEXIS 193, at *20-23 (Tex. App.ÂDallas Jan. 11, 2000, no pet.) (not
designated for publication) (The
Âchallenged provisions are cumulative
of other portions of affidavit
testimony which AT&T does not challenge or brief on appeal.Â).

Ibarra and Torres further objected that an
exhibit attached to A.W.Âs affidavit should be stricken because: (1) the affidavit
is deficient; (2) A.W. failed to state that the document was a true and correct
copy of the original; and (3) A.W. signed the document on behalf of the wrong
entity.Â  Each is an objection to a defect of form, which is not preserved for
appellate review.Â  See Seidner
v. Citibank (South Dakota) N.A.,
201 S.W.3d 332, 334-35Â (Tex. App.ÂHouston [14th Dist.] 2006, pet. denied)
(Deficient business records affidavit);
see also Wynne v.
Citibank (South Dakota) N.A.,
No. 07-06-00162-CV, 2008 Tex. App. LEXIS 3037, at *5-8 (Tex.
App.ÂAmarillo Apr. 25, 2008, pet. denied) (mem. op.)Â  (Failure to state that attached exhibit
is a Âtrue and correct copy of the original.Â); Eix, Inc. v. JP Morgan Chase Bank, N.A., No.
14-08-00042-CV, 2009
Tex. App. LEXIS 1107, at *6 (Tex. App.ÂHouston [14th Dist.] Feb. 19, 2009, no
pet.) (mem. op.) (Inaccuracies between affidavit and attachment).

Finally, Ibarra and Torres objected to
those portions of the motion that relied on A.W.Âs affidavit and Billy MossÂs
deposition testimony.Â  As to the affidavit, we have previously concluded that
the same or similar evidence is contained elsewhere in the summary judgment
record.Â  Moreover, IbarraÂs and TorresÂs objections to portions of BillyÂs
deposition testimony are based on lack of personal knowledge, which is a defect
of form on which they failed to obtain a ruling.Â  See Choctaw
Props., 127 S.W.3d at 241.

Accordingly, we cannot say that the
trial court abused its discretion by failing to grant the objections to
the summary judgment evidence.Â  We overrule issue one.

SUMMARY JUDGMENT

In issue two, Ibarra and Torres contend
that the trial court abused its discretion by granting the no-evidence and
traditional motions.

Negligence and Gross Negligence

The elements of negligence are duty,
breach, and damages proximately caused by the breach.Â  See Kroger Co. v. Elwood,
197 S.W.3d 793, 794 (Tex. 2006) (per curiam). Â ÂThe
threshold inquiry regarding a gross negligence claim is whether a legal duty
existed.Â Â RT Realty, 181 S.W.3d at 914.Â  Ibarra and Torres argue
that the Hines Appellees are not liable as property owners, but as the general
contractor, occupier of the premises, or both. [4]Â  They contend that A.W. and Ricky were
acting as agents for the Hines businesses.

A general contractor or premises owner/occupier
Âcan be liable to its independent contractorÂs employees, Âbut only to the
extent it retained contractual or actual control of them.ÂÂÂ  Norton v. Key Energy Servs., No.
10-06-00130-CV, 2008 Tex.
App. LEXIS 4706, at *5Â (Tex. App.ÂWaco June 25, 2008, no pet.) (mem. op.)
(quoting Cent. Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651
(Tex. 2007)); see Belteton v. Desco Steel Erectors and Concrete, Inc.,
222 S.W.3d 600, 605 (Tex. App.ÂHouston [14th Dist.] 2007, no pet.); see also
McClure v. Denham, 162 S.W.3d 346, 350-51 (Tex. App.ÂFort Worth 2005, no
pet.). Â ÂA duty of care
will ariseÂ only when such control is retained or actually exercised over
the means, methods, or details of the independent contractorÂs work.ÂÂ  McClure, 162 S.W.3d at 351.Â  ÂFurther, the control must relate to the
activity that actually caused the injury.ÂÂ  Id.

A.W. testified that the spillway was
leaking. Â On behalf of the HomeownerÂs Association, he contacted Moss to repair
the leak and, upon Billy MossÂs request, contacted Bolton to perform the
excavation work.Â  Billy told A.W. that the spillway needed to be sealed.Â  A.W.
understood that Bolton was to dig around the spillway so that Moss could repair
the leak.Â  A.W. admitted that he is probably the person who told Moss to
proceed with the work, but that Bolton dug the trench at MossÂs direction and
under BillyÂs instruction.Â  In fact, A.W. once heard Billy telling Bolton to
slope the walls.Â  

Billy testified that he and the Bolton
backhoe operator were in charge of the excavation.Â  He explained that the
operator digs the trench per Occupational Safety and Health Administration
regulations.Â  Billy testified that his superintendents are responsible for
ensuring that the trench is dug properly.Â  After Bolton dug the trench, Billy
requested additional sloping of the trench walls.Â  Billy recalled seeing A.W.
at the site on one occasion, when Billy explained the procedure for repairing
the leak.Â  Billy testified that A.W. did not direct the job in any way and was
not involved in discussions regarding the patch work.Â  He did not recall any of
the Hines Appellees directing BoltonÂs work.Â  Moss employees are paid by Billy,
directed by him, and answered to him.Â  According to Billy, Moss and Bolton were
free to perform their work as they saw fit.Â  A.W. did not provide any tools or
equipment.Â  There was no written contract.Â 


In his affidavit, Ibarra stated that
Moss was hired to repair the leaking spillway and Bolton was hired to dig
around the spillway.Â  Ibarra stated that Nick Moss, BillyÂs son, was
supervising.Â  In his deposition testimony, Ibarra testified that after Nick checked over the site and
left, he took over as supervisor.Â  Ibarra admitted that he had no discussions
with any of the Hines Appellees about beginning work and he never saw any of
the Hines Appellees giving instructions.Â  Rather, Nick communicated with the
operator, instructing where to dig, whether the trench was deep enough, and
whether the trench needed further work.Â  Ibarra admitted that it was NickÂs job
to work with Bolton.Â  He testified that Moss and Bolton had the expertise to
perform the work, were responsible for the repairs, and used their own tools
and equipment to do so.

The record does not suggest that the
Hines Appellees contractually retained or physically exercised control over the
excavation work performed by Bolton.Â  The Hines Appellees, as either general
contractor or occupier of the premises, owed no duty to Ibarra.Â  For this
reason, Ibarra and Torres cannot prevail on their negligence and gross
negligence claims.Â  See Norton, 2008 Tex. App. LEXIS 4706, at *5-6;
see also Belteton, 222 S.W.3d at 605-07; McClure, 162
S.W.3d at 351-52.

Premises Liability and Negligent
Activity

There are two subcategories of premises liability: (1) Âdefects
existing on the premises when the independent contractor/invitee entered,Â i.e.,
premises defect; and (2) Âdefects the independent contractor created by its
work activity,Â i.e., negligent activity.Â  Coastal Marine Serv., Inc. v. Lawrence, 988 S.W.2d 223, 225 (Tex. 1999); Painter
v. Momentum Energy Corp., 271 S.W.3d 388, 405-06Â (Tex. App.ÂEl Paso
2008, pet. denied).Â  

Under subcategory one, there is Âa duty
to inspect the premises and warn the independent contractor/invitee of
dangerous conditions that are not open and obvious and that the owner knows or
should have known exist.ÂÂ  Lawrence, 988 S.W.2d at 225; see Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 527 (Tex. 1997). Â Â[P]remises defects of this type are
ones Âin which the danger did not arise through the work activity of the
subcontractor/invitee.ÂÂ Â Lawrence,
988 S.W.2d at 225.Â  ÂOnly concealed hazards--dangerous in
their own right and independent of action by another--that are in existence
when the independent contractor enters the premises fall into this first
subcategory of premises defects.ÂÂ  Id.

Under subcategory two, there is Âno duty
to ensure that an independent contractor performs its work in a safe manner.ÂÂ  Id.; see Olivo, 952 S.W.2d at 527.Â  An exception exists where the premises
owner/occupier or general contractor Âretains the right of supervisory control
over work on the premises.ÂÂ  Lawrence, 988 S.W.2d at 225-26; see Olivo,
952 S.W.2d at 528.Â  ÂThe
right to control must be more than a general right to order work to stop and
start, or to inspect progress.Â Â Lawrence, 988 S.W.2d at 226.Â  ÂThe supervisory control must relate
to the activity that actually caused the injury, and grant the owner [or
general contractor] at least the power to direct the order in which work is to
be done or the power to forbid it being done in an unsafe manner.ÂÂ  Id.

The record in this case does not support
a premises liability claim for either a premises defect or negligent activity.Â 
First, the record shows
that the trench was not a concealed or preexisting condition. Â See Lawrence, 988 S.W.2d at 225.Â  Billy
testified that his superintendents are responsible for conducting daily
inspections of the trench.Â  Superintends must look for shifting, cracking,
settling, and pooling water.Â  In
his deposition testimony, Ibarra
testified that he did not believe the trench was safe.Â  Before entering the
trench, he saw dirt fall into the trench and saw water pooling in the trench.Â 
He told Nick that the trench was dangerous, but Nick stated that other
employees had worked in the trench the previous day and that the job needed to
be completed quickly.Â  Ibarra knew the walls of the trench were too steep.Â  He
explained that Bolton dug
the walls of the trench too vertically and that no protection, such as an iron
box to catch falling dirt or digging the walls of the trench diagonally to
prevent falling dirt, was provided.Â  Ibarra testified that an iron box or
sloping makes the trench more secure and prevents the walls from caving in and
causing an accident.

The evidence establishes that
superintendents, like Ibarra, were charged with the responsibility of
inspecting the trench for specific signs of danger.Â  Assuming without deciding
that the trench walls constituted a dangerous condition, the summary-judgment
evidence conclusively establishes that such condition was an open and obvious
defect that arose from the work of the independent contractors.Â  See Lawrence, 988 S.W.2d at 225.

Second, as previously discussed, the
record contains no evidence that any of the Hines Appellees exercised control
over the excavation work that caused IbarraÂs injury.Â  Any right of control they may have had
merely consisted of authorizing Moss to proceed with the work and did not
involve directing the manner in which Moss repaired the leak or Bolton
excavated the area.Â  See Lawrence, 988 S.W.2d at 226; see also
Olivo, 952 S.W.2d at 528.

In summary, we conclude that Ibarra and
Torres cannot establish premises liability under either a premises defect or
negligent activity theory.

Negligent Hiring

ÂAn employer who hires an independent
contractor may be held responsible for his acts if the employer Âknew or should
have known that the contractor was incompetent and a third person is injured
because of such incompetency.ÂÂÂ  McClure, 162 S.W.3d at 354. Â However, the employee of an independent contractor
is not Âconsidered a third party to whom such a duty is owed.ÂÂ  Id.Â  The
person who hires the independent contractor is not Âliable
to an independent contractorÂs employee on the ground of negligent hiring.ÂÂ  Hagins v. E-Z Mart Stores, Inc., 128 S.W.3d 383, 393 (Tex.
App.ÂTexarkana 2004, no pet.); see McClure, 162 S.W.3d at 355.

It is undisputed that A.W. hired Moss
and Bolton.Â  Because Ibarra is the employee of Moss, an independent contractor,
the Hines Appellees are not liable to him for negligent hiring.Â  See Hagins,
128 S.W.3d at 393; see also McClure, 162 S.W.3d at
354.Â  Ibarra and Torres cannot prevail on their negligent hiring claim.

Negligence Per Se

As part of establishing a negligence per
se claim, a plaintiff must prove that the ÂdefendantÂs act or omission is
in violation of a statute or ordinance.Â Â Ambrosio v. CarterÂs Shooting Ctr., Inc., 20 S.W.3d 262, 265 (Tex. App.ÂHouston
[14th Dist.] 2000, pet. denied).Â  Ibarra and Torres allege violations of three
statutes.

First, they rely on chapter 411 of the
Labor Code.Â  See Tex. Lab. Code
Ann. Â§Â§ 411.001 et. seq. (Vernon 2006) (workerÂs health and safety).Â 
However, chapter 411 applies to employers.Â  See Good v. Dow Chem. Co.,
945 S.W.2d 877, 880 (Tex. App.ÂHouston [1st Dist.] 1997, no pet.)[5];
see also Tex. Lab. Code Ann. Â§ 411.102(2)-(3) (Vernon 2006) (An ÂemployeeÂ Âworks for an
employer forÂ compensationÂ and an ÂemployerÂ Âhas control or custody of
anyÂ employment, place of employment, or employee.Â).Â  Ibarra was employed by Moss, not the
Hines Appellees.Â  See Good, 945 S.W.2d at 880.Â  Â Â Â Â Â 

Second, Ibarra and Torres rely on
section 22.02 of the Penal Code.Â  See Tex. Pen. Code Ann. Â§ 22.02 (Vernon Supp. 2009) (aggravated
assault).Â  ÂAs a general
rule, a person has no legal duty to protect another from the criminal acts of a
third person or control the conduct of another.ÂÂ  Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). Â ÂSimilarly, a landowner has no duty to
prevent criminal acts of third parties who are not under the landownerÂs
supervision or control.ÂÂ  Id.Â  The Hines Appellees exercised no
supervision or control over the independent contractors; thus, they owed no
duty to protect Ibarra from BoltonÂs actions.Â  See Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21, 23
(Tex. 1993).

Finally, Ibarra and Torres assert
violations of the Occupational Safety and Health Administration regulations.Â 
However, Âregulations promulgated under the OSHA statute neither create an
implied cause of action nor establish negligence per se.ÂÂ  McClure, 162 S.W.3d at 353; see Abarca v. Scott Morgan Residential, Inc., 305 S.W.3d 110, 128-29Â (Tex.
App.ÂHouston [1st Dist.] 2009, pet. denied).

Because none of the statutes relied on
by Ibarra and Torres support their negligence per se claim, summary
judgment was proper as to this claim.

Negligent Undertaking

Â Â Â Â Â Â Â Â Â Â Â  To establish a claim for a
negligent undertaking, a plaintiff must show, in part, that the Âdefendant
undertook to perform services that it knew or should have known were necessary
for the plaintiffÂs protection.Â Â Pugh
v. General Terrazzo Supplies, Inc.,
243 S.W.3d 84, 94 (Tex. App.ÂHouston [1st Dist.] 2007, pet. denied).Â  A negligent undertaking requires an affirmative act upon
which reliance can be based.Â  Kirk
v. Precis, Inc., No. 2-05-00297-CV, 2006 Tex. App. LEXIS 10635, at *20 (Tex.
App.ÂFort Worth Dec. 14, 2006, pet. denied) (mem. op.).Â  The record does not
indicate that the Hines Appellees undertook any affirmative act or undertook a
duty to provide for IbarraÂs protection.Â  See Torrington, 46 S.W.3d at
837-39.Â Â In fact, it is the Hines AppelleesÂ failure to act on which
IbarraÂs claim is based.Â  For this reason, Ibarra and Torres cannot prevail on
their claim for negligent undertaking.

In summary, we cannot say that Ibarra
and Torres have raised a fact issue as to whether the Hines Appellees committed
negligence, negligence per se, negligent activity, premises defect, negligent
hiring, gross negligence, or negligent undertaking.Â  We overrule issue two.

CONCLUSION

Having overruled IbarraÂs and TorresÂs two
issues, we affirm the trial courtÂs judgment.

Â Â Â  

FELIPE REYNA

Justice

Before
Chief Justice Gray,

Justice Reyna, and

Judge Pozza[6]

(Chief Justice Gray concurring)

Affirmed


Opinion
delivered and filed July 21, 2010

[CV06]

Â 

Â 

Â 

Â 

Â 









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  Ibarra and Torres do not
appeal all their objections to the summary judgment evidence.

Â  





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  Even had the issue been preserved, Â[g]enerally, a misnamed pleading will not fail if it gives
adequate notice to the opposing parties.ÂÂ  Wilie v. Signature Geophysical Servs., 65 S.W.3d 355, 362
(Tex. App.ÂHouston [14th Dist.] 2001, pet. denied).Â  There is no indication
that Ibarra and Torres were misled as to the true parties to the motion.Â  See id.





[3] Â Â Â Â Â Â Â Â Â Â Â Â Â  Although Ibarra and
Torres failed to obtain a ruling on their special exception, Â[w]hen the motion
for summary judgment clearly presents certain grounds but not others, a
non-movant is not required to except.ÂÂ  McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993); see
McMahon Contr., L.P. v. City of Carrollton, 277 S.W.3d 458, 467 (Tex.
App.ÂDallas 2009, pet. denied).





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Because a premises owner owes
the same duty as a general
contractor to an independent contractorÂs employee, cases
considering the duties of each are used interchangeably. Â McClure v. Denham, 162 S.W.3d 346, 351, n.3 (Tex.
App.ÂFort Worth 2005, no pet.).





[5] Â Â Â Â Â Â Â Â Â Â Â Â Â  Good cites to the
prior version of the statute:

Â 

ÂEmployeeÂ
means an individual who works for an employer for wages, compensation, or other
things of value.

Â 

ÂEmployerÂ
means an individualÂwho has control or custody of any employment, place of
employment or employee.


ÂPlace of EmploymentÂ means every place
where, either temporarily or permanently, any trade, industry, or business is
carried on or any employee is directly or indirectly employed by another for
direct or indirect gain or profit.

Â 

Act of May
27, 1985, 69th Leg., R.S., ch. 931, 1985 Tex. Gen. Laws 3121, 3150-51, repealed
by Act of April 25, 1995, 74th Leg., R.S., ch. 76, Â§ 9.54, 1995 Tex. Gen.
Laws 458, 656; Good v.
Dow Chem. Co., 945
S.W.2d 877, 879-80 (Tex. App.ÂHouston [1st Dist.] 1997, no pet.).Â  These definitions were substantially
unchanged when codified:

Â 

ÂEmployeeÂ
means an individual who works for an employer forÂ compensation.

Â 

ÂEmployerÂ
means a person who has control or custody of any employment, place of
employment, or employee.

Â 
ÂPlace of employmentÂ means a location, other than a private residence where
domestic service is performed, where: (A) a trade, industry, or business is
temporarily or permanently conducted; or (B) an employee is directly or
indirectly employed by another forÂ direct or indirect gain.

Â 

Tex. Lab. Code Ann. Â§ 411.102(2)-(4) (Vernon 2006).





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The Honorable Karen H. Pozza, Judge of the 407th District Court, sitting by assignment of the Chief
Justice of the Supreme Court of Texas pursuant to section 74.003(h) of the
Government Code.Â  See Tex. GovÂt
Code Ann. Â§ 74.003(h) (Vernon 2005).