Luis Arturo Guevara BELTETON, Temporary Administrator of the Estate of Flavio Gonzales–Soto, Deceased, Telma Guevara Belteton, Individually and as Next Friend of Roel Estuardo Gonzalez Guevara, NCM, Sandra Elizabeth Gonzalez Guevara, A Minor Child, and Marlene Lorena Gonzalez Guevara, A Minor Child, Fredy Otoniel Gonzalez Guevara, Individually, Herbert Gonzalez Guevara, Individually, Flavio Abraham Gonzalez Guevara, Individually, and Bernabe Gonzalez Cordova, Individually, Appellants

v.

DESCO STEEL ERECTORS AND CONCRETE, INC., Jose De Santiago d/b/a Desco Steel Erectors et al., and Adrian Industrial Constructors, Inc., Appellees.

No. 14–06–00301–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 13, 2007.

Dwight E. Jefferson, Houston, for appellants.

Jack McKinley, Richard Justin White, Robert L. Ramey, and Steven D. Naumann, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellants, Luis Arturo Guevera Belteton, temporary administrator of the estate of Flavio Gonzales–Soto ("Soto"), deceased, et al. (collectively referred to as "Appellants"), appeal from the trial court's granting of a summary judgment in favor of the appellee, Adrian Industrial Constructors, Inc. ("Adrian"). Appellants brought suit after Soto fell to his death while working on a construction site. Appellants bring one issue complaining that the trial court erred when it granted Adrian's motion for summary judgment. We affirm.

## I. BACKGROUND

Adrian was hired by Marine Max to strip the existing shell of a metal building and replace it with new metal "skin." Adrian's president, Billy Ray Combs, entered into discussions with Jose de Santiago, the president of Desco Steel Erectors & Concrete, Inc. ("Desco"), to work on the project. At some point during the discussions, Adrian sent Desco a subcontract agreement ("Subcontract Agreement") to sign. Adrian also requested, both orally and in the contract itself, that Desco maintain liability insurance. Desco began working on the project despite never signing the agreement or sending proof of insurance in its own name.

Desco hired Soto and two other employees to work on the project.[1] On the third day of work, Soto fell through a skyglass window and was killed. Appellants brought an action for negligence and gross

negligence against several defendants, including Adrian.

Adrian filed a no-evidence motion for summary judgment, which was granted on May 25, 2004. Appellants' motion to reconsider and vacate the no-evidence summary judgment was granted on November 19, 2004. Adrian then filed a traditional motion for summary judgment, which was granted on January 11, 2006. Appellants' motion to reconsider and vacate the second motion for summary judgment was denied. All other parties have settled with Appellants pursuant to final judgments. Appellants bring this appeal solely as to Adrian.

## II. ANALYSIS

In their sole point of error, Appellants argue that the trial court erred when it granted Adrian's second motion for summary judgment. In a traditional motion for summary judgment, the movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant is entitled to summary judgment only if he (1) conclusively negates at least one element of each of the plaintiff's causes of action, or (2) conclusively establishes each element of an affirmative defense to each claim. *KPMG Peat Marwick*, 988 S.W.2d at 748; *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). In deciding whether a disputed material fact issue precludes summary judgment, summary judgment evidence favorable to the nonmovant will be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and any doubts are resolved

---

1. Note that Appellants contend that there is some evidence showing Soto to have been John Hurier's employee at the time of the accident. As discussed below, they do not offer any material evidence showing this. *See infra* p. 11–14.

in the nonmovant's favor. *KPMG Peat Marwick,* 988 S.W.2d at 748; *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex.1985). We review *de novo* the trial court's decision to grant summary judgment. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994).

■ Appellants sued Adrian based on theories of negligence and gross negligence. Common law negligence consists of three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Adrian moved for summary judgment on the ground that it owed no duty to Soto. Appellants allege that Adrian owed Soto a duty (1) through Adrian's agency relationship with Desco, (2) because Adrian had a sufficient degree of control over Desco, (3) as a premises owner of the property on which Soto died, and (4) in employing Desco.

## A. Agency Relationship

■ Appellants first argue that Adrian is vicariously responsible for the actions of Desco because Desco was Adrian's agent, as opposed to its independent contractor. An independent contractor has been defined as any person who, "in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Cherqui v. Westheimer St. Festival Corp.,* 116 S.W.3d 337, 347 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (quoting *Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961)). The primary concern when evaluating whether one is an independent contractor or an employee is the degree of control the gen-

eral contractor maintains. *See Limestone Prod. Dist., Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex.2002) ("The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work.") (citing *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990)); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

■ Appellants point to the absence of a written agreement establishing a general contractor/independent contractor relationship as evidence that Desco was not an independent contractor of Adrian. A written agreement, however, is not required to establish a general contractor/independent contractor relationship. *See McNamara,* 71 S.W.3d at 312 (finding that the essential factor in determining whether one is an employee, as opposed to an independent contractor, is whether the employer has a right to control). Therefore, Appellants' assertion that there was no written agreement fails to respond to Adrian's summary judgment evidence proving that they had no right to control Desco. Thus, Appellants have failed to present any evidence raising a material fact issue. *See Phan Son Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999) (stating the established rule that if the moving party produces summary judgment evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a material fact issue).

## B. Adrian's Control over Desco

■ Appellants also contend that the degree of control Adrian had over Desco evidenced an agency relationship. In the alternative, they argue that if this Court finds Desco to be an independent contractor, then Adrian had sufficient control over

Desco such that it assumed a duty to ensure that Desco performed its work safely. Because both of these arguments rely on the same facts to prove control, we discuss the common materiality of their evidence.

■■■■ Generally, a general contractor does not have a duty to ensure that an independent contractor safely performs his work. *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 293 (Tex.2004); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985). However, when the general contractor retains some control over the independent contractor's work, it must exercise that control with reasonable care. *Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 607 (Tex. 2002); *Redinger,* 689 S.W.2d at 418 (adopting the rule as stated in the RESTATEMENT (SECOND) OF TORTS § 414 (1977)). A party can prove control through evidence of a contractual agreement that "explicitly assigns the premises owner a right to control" or by evidence that the "owner actually exercised control over the manner in which the independent contractor's work was performed." [2] *Bright,* 89 S.W.3d at 606 (citing to *Koch,* 11 S.W.3d at 155). To prove that the general contractor breached a pertinent duty, a nexus must be shown between the general contractor's retained control and the condition or activity that caused the injury. *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 356 (Tex. 1998) (per curiam); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 528 (Tex.1997).

The *Redinger* line of cases has adopted the comments to the RESTATEMENT OF TORTS § 414 which state that:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

RESTATEMENT (SECOND) OF TORTS § 414 (quoted in *Redinger,* 689 S.W.2d at 418); *see also Koch,* 11 S.W.3d at 155–56 (applying § 414 in determining whether the general contractor had requisite degree of control); *Hoechst–Celanese,* 967 S.W.2d at 356.

■■■■ Appellants argue that several provisions in the Subcontract Agreement gave Adrian a contractual right of control over Desco. They have failed, however, to offer any evidence that the Subcontract Agreement was actually agreed upon by the parties. In fact, both Jose de Santiago and Billy Ray Combs, the two respective principals for Desco and Adrian, testified in their depositions that the Subcontract Agreement was never signed by both parties. As the Supreme Court stated in *Bright,* to prove contractual right of control, there must be "evidence of a contractual agreement that *explicitly* assigns the premises owner a right to control." *Bright,* 89 S.W.3d at 606 (emphasis added). There is, therefore, no evidence that the rights provided for in the Subcontract Agreement were explicitly assigned to Adrian.

**2.** A premises owner and a general contractor both owe the same duties to an independent contractor's employees. Therefore, the cases considering these duties are used interchangeably. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 n. 1 (Tex.1999).

Appellants next contend that Adrian's requirement that Desco maintain liability insurance evidences Adrian's right to control Desco. It is also unclear as to whether this contingency was agreed upon by the parties.[3] Assuming *arguendo* that Adrian and Desco reached an agreement, we do not find such a requirement to be a degree of control over Desco sufficient to establish Adrian's right of control. Appellants rely on *Pollard v. Missouri Pac. R.R* . to support their contention that the authority to specify insurance coverage gives rise to a general contractor duty. 759 S.W.2d 670 (Tex.1988). In *Pollard,* Balch, Pollard's employer, had contracted with Missouri Pacific Railroad Company ("MOPAC") to remove certain poles and wires from one of its right-of-ways. *Id.* at 670. Pollard sued MOPAC after he was injured while removing one of the poles. *Id.* In reversing the lower court's decision, the Supreme Court found that the lower court had used the wrong standard by evaluating only whether MOPAC had actually exercised control over Balch, not whether MOPAC had a right to control Balch. *Id.* The Court further held that the contractual rights MOPAC retained were sufficient to give rise to a duty to Pollard. *Id.* The retained contractual rights listed by the Court were: "(1) control over the completion time of the contract, (2) authority to specify the poles to be removed, (3) authority to specify insurance coverage, and (4) control over access and storage of materials involving MOPAC's right-of-way." *Id.* Under Appellants' interpretation of *Pollard,* any one of the contractual rights the Court mentioned was sufficient to give rise to a general contractor's duty.

We believe this is an unduly limited reading of *Pollard.* After listing the four contractual rights retained by MOPAC, the Supreme Court held, without identifying a specific right, "that the contractual retention of control by MOPAC gives rise to the duty expressly adopted in *Redinger.*" *Id.* Nowhere did the Supreme Court enunciate which individual contractual right, if any, was dispositive to its decision. *Pollard* does not stand for the proposition that the contractual right to specify insurance coverage alone is sufficient to give rise to general contractor duties.

■ Moreover, the Supreme Court has subsequently made clear that there must be a nexus between an employer's retained control and the condition or activity that caused the injury. *Khan,* 138 S.W.3d at 294; *Bright,* 89 S.W.3d at 606; *Olivo,* 952 S.W.2d at 528; *Hoechst–Celanese,* 967 S.W.2d at 356. Many of these cases have addressed whether a general contractor's requirement that the independent contractor observe certain safety guidelines is sufficient control to give rise to a general contractor duty. *See Khan,* 138 S.W.3d at 293–94; *Bright,* 89 S.W.3d at 607; *Hoechst–Celanese,* 967 S.W.2d at 356–58. As the Supreme Court stated, the requirement that certain safety procedures be followed has no reasonable connection with an imposition on the general contractor of an unqualified duty of care to ensure that the independent contractor's employees are kept safe. *See Hoechst–Celanese,* 967 S.W.2d at 357–58 (holding that the general contractor's insistence that the independent contractor comply with safety guidelines "did not impose an unqualified duty

---

**3.** The depositions of Santiago and Combs offer conflicting testimony as to whether the parties agreed upon an insurance requirement (Santiago even contradicting himself at times). For instance, Santiago testified that he "took the gamble" to start work for Adrian in hopes that his insurance certificate would soon arrive. This could be interpreted as evidence that Santiago understood some perceived obligation to obtain insurance. In another portion of his deposition, however, Santiago testified that he never signed the Subcontract Agreement because of the provision requiring insurance.

of care on Celanese [the general contractor] to ensure that Mundy employees did nothing unsafe"). Rather, the right to require the independent contractor to follow certain safety procedures is commensurate with a duty that the safety requirement "does not increase, rather than decrease, the probability and severity of injury." *Id.* at 358.

■■■ Similar to the safety requirements in those cases, insurance requirements are precautionary measures which have the effect (if not the purpose) of ensuring that the independent contractor and its employees are protected from the consequences of mishap. Because we think that insurance and safety requirements involve similar considerations, we do not find that the general contractor's right to specify insurance coverage creates an unqualified duty to protect the independent contractor from injury. *See Hoechst–Celanese,* 967 S.W.2d at 357–58. It does, however, obligate the general contractor to ensure that such a requirement does not increase the probability or severity of injury. *Id.* at 358. We do not find that Adrian's requirement of insurance from Desco increased the probability of Soto falling through the skyglass or increased the severity of harm therefrom. Therefore, we find that if such an obligation existed, no breached duty from that obligation has been shown.[4]

Appellants further posit that "Adrian allowed Desco to begin work without confirming that Desco had liability insurance ..., which shows that Adrian, as principal, had control of when its agent, Desco, was authorized to begin work." This inference is not reasonable based on the evidence. *See KPMG Peat Marwick,* 988 S.W.2d at

748 (stating the rule that "every *reasonable* inference must be indulged in favor of the nonmovant") (emphasis added). Additionally, the comments to RESTATEMENT (SECOND) OF TORTS § 414, adopted by the *Redinger* line of cases, states that "it is not enough that [the general contractor] has merely a general right to order the work stopped or resumed." RESTATEMENT (SECOND) OF TORTS § 414. Similarly, we see no reason to impose a duty on the general contractor when they merely have the right to order the work to begin.

Finally, Appellants state that Combs' presence at the jobsite when the work was being performed "suggests that he [Combs] had some right of control over how the job was being performed" and shows that he "was aware that Desco was ignoring safety guidelines and failed to take corrective measures." There is no evidence that Combs observed any violation of safety guidelines. Moreover, the inferences that Appellants draw from Combs' presence—that Combs had some right of control over how the job was being performed and was aware that Desco was ignoring safety guidelines—are not reasonable. *See KPMG Peat Marwick,* 988 S.W.2d at 748. Appellants have failed to offer any facts showing that Adrian had a right of control over Desco sufficient to justify imposing a duty.

## C. Premises Defects

■■■ Appellants also claim that Adrian is liable for certain premises defects. In the context of general contractor/independent contractor relationships, the Supreme Court has divided premises defects into two categories: (1) those existing

---

**4.** We also note the undesirable practical effect of imposing a general duty of care on any general contractor who requires insurance from their independent contractor. Such a holding would create more liability for a general contractor who takes precautionary measures for the event of mishap than a general contractor who simply chooses to ignore such a possibility. A rule which encourages less preparation for undesirable future events cannot be a sound rule.

when an independent contractor enters, and (2) those created by the independent contractor's work. *Khan,* 138 S.W.3d at 295; *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 225 (Tex.1999). With respect to the first category of defects, the premises owner (or general contractor) has a duty to inspect the premises and warn the independent contractor of concealed hazards about which the owner knows or should have known. *Khan,* 138 S.W.3d at 295. Appellants do not allege any concealed defects. Under the second category, the general contractor generally has no duty to protect the independent contractor or its employees from defects that arise as a result of the independent contractor's work on the premises. *Khan,* 138 S.W.3d at 295; *Coastal Marine,* 988 S.W.2d at 225.

> However, a premises owner may be liable when the owner retains the right of supervisory control over work on the premises. In determining whether an owner has retained this right to control, the standard is narrow. The right to control must be more than a general right to order work to stop and start, or to inspect progress. The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner.

*Coastal Marine,* 988 S.W.2d at 225–26. Instead of alleging new facts showing Adrian's right to control Desco's work, Appellants rely on their assertion that Desco was the agent of Adrian at the time of the accident. Their reintroduction of the facts used in support of their argument that Adrian had a right to control Desco, such that Desco was the agent of Adrian, as support for their premises defect argument is unpersuasive.

## D. *Third Party v. Employee*

In their remaining issues, Appellants alternatively assert that Soto was a "third party," as opposed to an employee of Desco, when Soto fell to his death. Therefore, we must determine whether there is a material fact issue as to whether Soto was a third party. Appellants offer several facts in an attempt to raise such an issue. First, they cite Santiago's deposition testimony to establish that Soto was an employee of John Hurier, not Desco, at the time of the accident.

Q [Adrian's trial counsel]: How is John Hurier involved?

A [Santiago]: John Hurier—these people were employees of John Hurier. John Hurier is a customer of Desco Steel.

When I explained to him the case that I needed to man the job, he has laid off these people for about two or three weeks. I don't know how long. He give me the phone number of Flavio [Soto] to contact him to see if they were still working or if they wanted to go to work.

Contrary to appellant's interpretation, this testimony clearly states that Hurier had laid off the workers, including Soto, a couple of weeks earlier and that Hurier was recommending the workers to Santiago for his project. Any doubt otherwise is removed by Santiago's earlier testimony in the same deposition:

Q [trial counsel]: Tell me the next thing that happened after the paperwork went back and forth between you and Adrian contractors.

A [Santiago]: They worked the contract, came to that the material was ready. We were asked to man the job. Took me a few days. Couldn't get—didn't have enough people.

Q: Where did you find your hands?

A: The hands, I find them—my customer John Hurier, a couple of weeks previous he laid off his people. And I was commenting to him that I needed to man this job and I didn't have enough people to go around. And then he told me, *"Why don't you hire the ones that I laid off two weeks ago. They've been there about two or three weeks without any job."* (emphasis added)

This testimony makes it clear that Soto had ceased working for Hurier and was working for Santiago at the time of the accident.

Appellants also construe Combs' testimony as evidence that Soto was a third party:

Q [Appellant's trial counsel]: And, in fact, there was an electrician who told you that when you asked him about Jose [Soto], who John [Hurier] was, he told you, the electrician out on the jobsite that John was the guy that was doing the job?

A [Combs]: I remember that.

Q: Is that right? Not Jose [Soto]?

A: That's—

Q: Is that correct?

A: That would be correct.

At best, this confused testimony could be construed to suggest that Soto was not working on the jobsite. Such an inference is so unreasonable as to be no evidence at all, since it is uncontroverted that Soto died while working on the jobsite.

Appellants next contend that their own response in an interrogatory listing Hurier, and not Desco, as Soto's employer is some evidence of Soto's status as a third party. Civil Procedure Rule 197.3 states "[a]nswers to interrogatories may be used only against the responding party." TEX.R. CIV. P. 197.3. Thus, Appellants are unable to use their own interrogatory responses in support of their own contentions. *See Yates v. Fisher,* 988 S.W.2d 730, 731 (Tex.1998) (finding, in accordance with former Civil Procedure Rule 168(2), that the appeals court erred in using the plaintiff's interrogatory in plaintiff's favor to defeat the defendant's motion for summary judgment); *Garcia v. National Eligibility Express,* 4 S.W.3d 887, 890 (Tex. App.-Houston [1st Dist.] 1999, no pet.).

Appellants also point to a hospital record filed with their response to Adrian's second motion for summary judgment. The hospital record is a standardized admission form which appears to have been filled out when Soto was admitted to the hospital. In the box for "Patient Employer" and "Guarantor Employer," John Hurier's name is listed with an address and telephone number. It does not appear from the record though that the person who completed this form had personal knowledge of that fact or consulted with someone who did have such knowledge.[5] It is not our duty to speculate as to the origin of this clearly erroneous information. We find that the hospital record, as evidence of Soto being a third party, is so weak "as to do no more than create a mere surmise or suspicion" as to that fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence."); *see also Lozano v. Lozano,* 52 S.W.3d 141, 145 (Tex.2001) ("To rise above a scintilla, the evidence offered to prove a vital fact must do more than create a mere surmise or suspicion of its existence."). The hospital record contrasts with Santiago's testimony, the only individ-

---

5. Santiago noted in his deposition that Soto did not have any family in the country at the time of the accident and that Santiago had to pay for the body to be shipped to Guatemala.

ual on record who would have had the potential of having personal knowledge of Soto's employment. Santiago confirmed that Soto was employed by Desco at the time of the accident. We find that Appellants have presented no evidence sufficient to raise a material fact issue as to whether Soto was a third party rather than an employee of Desco.

In conclusion, Appellants have not raised a material fact issue as to whether Adrian owed a duty to Soto sufficient to support their negligence claims. Accordingly, we overrule Appellants' sole issue. We affirm the judgment of the trial court.