

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00231-CV

**JAIME IBARRA AND MARIA IBARRA TORRES,**

**Appellants**

 **v.**

**THE HINES LAND GROUP, LTD., A.W. HINES,
KELLY KING HINES, RICKY D. HINES, INDIVIDUALLY
AND D/B/A HINES DEVELOPMENT CORPORATION,
HINES DEVELOPMENT, LTD., AND HINES
DEVELOPMENT MANAGEMENT, LLC,**

**Appellees**

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2007-3728-4**

## MEMORANDUM  OPINION

The Hines Land Group, Ltd., A.W. Hines, Kelly King Hines, Ricky D. Hines, individually and d/b/a Hines Development Corporation, Hines Development, Ltd., and Hines Development Management LLC developed Pecan Valley Ranch subdivision. The subdivision contains a man-made lake. When a leak formed, A.W. Hines contacted Moss Concrete Construction Co., Inc. to repair the leak. Bolton Construction was hired

to dig an area around the spillway to allow Moss access to the leak. Jaime Ibarra, a Moss employee, was injured when a wall of dirt collapsed while Ibarra was repairing the leak. Ibarra and Maria Ibarra Torres sued the Hines Appellees, alleging multiple causes of action. The Hines Appellees filed traditional and no-evidence motions for summary judgment, which the trial court granted. Ibarra and Torres challenge (1) the trial court's failure to sustain their objections and special exceptions to the summary judgment evidence; and (2) granting the summary judgment motions. We affirm.

## STANDARDS OF REVIEW

We review a trial court's traditional summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller v. Wilson*, 168 S.W.3d 802, 822-24 (Tex. 2005)). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire*, 236 S.W.3d at 756 (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *Spates*, 186 S.W.3d at 568).

We review a no-evidence summary judgment under the same standard of review as a directed verdict. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting

evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 582. A no-evidence summary judgment will be defeated if the non-movant produces some evidence "raising an issue of material fact" on the elements challenged by the movant. *Id.*

## OBJECTIONS AND SPECIAL EXCEPTIONS

In issue one, Ibarra and Torres challenge the trial court's failure to sustain their objections and special exceptions.[1]

Ibarra and Torres specially excepted to the no-evidence and traditional motions for two reasons. First, one of the movants was Ricky Hines d/b/a Hines Development *Ltd.*, but Ricky had been sued individually and d/b/a Hines Development *Corp.* However, this special exception was not brought to the trial court's attention and the record does not indicate a ruling on the exception. *See In the Estate of Tyner*, 292 S.W.3d 179, 185 (Tex. App.—Tyler 2009, no pet.); *see also Rosas v. Hatz*, 147 S.W.3d 560, 563 (Tex. App.—Waco 2004, no pet.). Because Ibarra and Torres failed to obtain an explicit ruling on this special exception, it is not preserved for appellate review.[2] *See Tyner*, 292 S.W.3d at 185; *see also Rosas*, 147 S.W.3d at 563.

---

[1]     Ibarra and Torres do not appeal all their objections to the summary judgment evidence.

[2]     Even had the issue been preserved, "[g]enerally, a misnamed pleading will not fail if it gives adequate notice to the opposing parties." *Wilie v. Signature Geophysical Servs.*, 65 S.W.3d 355, 362 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). There is no indication that Ibarra and Torres were misled as to the true parties to the motion. *See id*.

Second, Ibarra and Torres argue that the motions failed to address their negligent undertaking, negligent activity, and exemplary damages/gross negligence claims.[3] When the motions were filed on May 12, Ibarra's and Torres's live pleadings alleged premises liability, negligence, negligence per se, negligent hiring, and gross negligence. On June 4, Ibarra and Torres filed a fourth amended petition also alleging negligent undertaking and negligent activity. The trial court considered the motions on June 9.

The fourth amended petition was timely filed, having been mailed May 29, on or before the last day for filing. *See* TEX. R. CIV. P. 5; *see also Beard v. Beard*, 49 S.W.3d 40, 54 (Tex. App.—Waco 2001, pet. denied). The order indicates that the trial court considered the "pleadings timely filed;" there is no claim of surprise or prejudice. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490-91 (Tex. 1988); *see also Spakes v. Weber*, No. 10-08-00313-CV, 2010 Tex. App. LEXIS 274, at *16-18 (Tex. App.—Waco Jan. 13, 2010, pet. filed) (mem. op.). We presume the trial court considered the amended petition.

The trial court's order dismissed "all claims" asserted by Ibarra and Torres. However, a trial court may not grant summary judgment on a claim not addressed in the summary-judgment motion. *See Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam); *see also Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 810 (Tex. App.—Dallas 2008, pet. denied); *Espeche v. Ritzell*, 123 S.W.3d 657, 663 (Tex. App.— Houston [14th Dist.] 2003, pet. denied); *Lehmann, v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). In both motions, the Hines Appellees argued that they owed no duty to

---

[3] Although Ibarra and Torres failed to obtain a ruling on their special exception, "[w]hen the motion for summary judgment clearly presents certain grounds but not others, a non-movant is not required to except." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993); *see McMahon Contr., L.P. v. City of Carrollton*, 277 S.W.3d 458, 467 (Tex. App.—Dallas 2009, pet. denied).

Ibarra.  Negligent undertaking, negligent activity, and gross negligence all require a showing of duty.  *See GE v. Moritz*, 257 S.W.3d 211, 214-16 (Tex. 2008) (negligent activity); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837-39 (Tex. 2000) (negligent undertaking); *RT Realty, L.P. v. Tex. Utils. Elec. Co.*, 181 S.W.3d 905, 914 (Tex. App.—Dallas 2006, no pet.) (gross negligence).  The summary judgment motions are "sufficiently broad to encompass [the] later-filed claims;" thus, the Hines Appellees were not required to amend their motions.  *Espeche*, 123 S.W.3d at 664; *see Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 922 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[S]ummary judgment is proper where a defendant has conclusively disproven an element central to all causes of action or an unaddressed cause of action derivative of the addressed causes of action.").  The judgment does not grant greater relief than requested.

Ibarra and Torres also objected to evidence attached to the traditional motion.  They did not obtain a ruling on these objections.  "[T]he granting of a summary-judgment motion does not necessarily provide an implicit ruling that either sustains or overrules objections to the summary-judgment evidence."  *Allen v. Albin*, 97 S.W.3d 655, 663 (Tex. App.—Waco 2002, no pet.).  Objections to the form of summary-judgment evidence are preserved for appellate review only if those objections are made and ruled on in the trial court.  *See Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.); *Trusty v. Strayhorn*, 87 S.W.3d 756, 762 (Tex. App.—Texarkana 2002, no pet.).  Substantive objections do not require a written ruling, and the objection may be raised for the first time on appeal.  *See Choctaw Props.*, 127 S.W.3d at

241.  Thus, we may consider only those objections challenging the substance of the Hines Appellees' evidence.  *See Anderson v. Limestone County*, No. 10-07-00174-CV, 2008 Tex. App. LEXIS 5041, at *5 (Tex. App.—Waco July 2, 2008, pet. denied) (mem. op.).

Ibarra and Torres objected that A.W. Hines's affidavit: (1) omitted a statement that the facts contained therein are within his "personal knowledge" and "true and correct;" (2) set forth no facts from which personal knowledge could be inferred; (3) contained conclusory statements; (4) contained subjective opinions; (5) constituted self-serving testimony; (6) was based on hearsay; and (7) failed to "positively and unqualifiedly" represent the truth of the facts.  The first, second, fifth, sixth, and seventh objections are defects of form that are not preserved for appellate review.  *See Choctaw Props.*, 127 S.W.3d at 241; *see also Youngblood v. U.S. Silica Co.*, 130 S.W.3d 461, 468 (Tex. App.—Texarkana 2004, pet. denied); *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.).  The remaining objections are substantive and may be considered for the first time on appeal.  *See Choctaw*, 127 S.W.3d at 241; *see also Willis v. Nucor Corp.*, 282 S.W.3d 536, 548 (Tex. App.—Waco 2008, no pet.).

Ibarra and Torres objected to several excerpts from A.W.'s affidavit as conclusory and subjective.  However, the record contains other evidence, including A.W.'s deposition, Ibarra's deposition, Billy Moss's deposition, and interrogatory responses, which conveys the same or similar information.  Thus, any error in the consideration of the affidavit would be harmless.  *See Aguillera v. John G. & Marie Stella Kenedy Mem'l Found.*, 162 S.W.3d 689, 697 (Tex. App.—Corpus Christi 2005, pet. denied) (Late-filed evidence was "merely cumulative of other evidence that was timely filed."); *see also*

*AT&T Corp. v. Sw. Bell Tel. Co.*, No. 05-99-00186-CV, 2000 Tex. App. LEXIS 193, at *20-23 (Tex. App.—Dallas Jan. 11, 2000, no pet.) (not designated for publication) (The "challenged provisions are cumulative of other portions of affidavit testimony which AT&T does not challenge or brief on appeal.").

Ibarra and Torres further objected that an exhibit attached to A.W.'s affidavit should be stricken because: (1) the affidavit is deficient; (2) A.W. failed to state that the document was a true and correct copy of the original; and (3) A.W. signed the document on behalf of the wrong entity. Each is an objection to a defect of form, which is not preserved for appellate review. *See Seidner v. Citibank (South Dakota) N.A.*, 201 S.W.3d 332, 334-35 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (Deficient business records affidavit); *see also Wynne v. Citibank (South Dakota) N.A.*, No. 07-06-00162-CV, 2008 Tex. App. LEXIS 3037, at *5-8 (Tex. App.—Amarillo Apr. 25, 2008, pet. denied) (mem. op.) (Failure to state that attached exhibit is a "true and correct copy of the original."); *Eix, Inc. v. JP Morgan Chase Bank, N.A.*, No. 14-08-00042-CV, 2009 Tex. App. LEXIS 1107, at *6 (Tex. App.—Houston [14th Dist.] Feb. 19, 2009, no pet.) (mem. op.) (Inaccuracies between affidavit and attachment).

Finally, Ibarra and Torres objected to those portions of the motion that relied on A.W.'s affidavit and Billy Moss's deposition testimony. As to the affidavit, we have previously concluded that the same or similar evidence is contained elsewhere in the summary judgment record. Moreover, Ibarra's and Torres's objections to portions of Billy's deposition testimony are based on lack of personal knowledge, which is a defect of form on which they failed to obtain a ruling. *See Choctaw Props.*, 127 S.W.3d at 241.

Accordingly, we cannot say that the trial court abused its discretion by failing to grant the objections to the summary judgment evidence. We overrule issue one.

## SUMMARY JUDGMENT

In issue two, Ibarra and Torres contend that the trial court abused its discretion by granting the no-evidence and traditional motions.

### Negligence and Gross Negligence

The elements of negligence are duty, breach, and damages proximately caused by the breach. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). "The threshold inquiry regarding a gross negligence claim is whether a legal duty existed." *RT Realty*, 181 S.W.3d at 914. Ibarra and Torres argue that the Hines Appellees are not liable as property owners, but as the general contractor, occupier of the premises, or both.[4] They contend that A.W. and Ricky were acting as agents for the Hines businesses.

A general contractor or premises owner/occupier "can be liable to its independent contractor's employees, 'but only to the extent it retained contractual or actual control of them.'" *Norton v. Key Energy Servs.*, No. 10-06-00130-CV, 2008 Tex. App. LEXIS 4706, at *5 (Tex. App.—Waco June 25, 2008, no pet.) (mem. op.) (quoting *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)); *see Belteton v. Desco Steel Erectors and Concrete, Inc.*, 222 S.W.3d 600, 605 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also McClure v. Denham*, 162 S.W.3d 346, 350-51 (Tex. App.—Fort

---

[4] Because a premises owner owes the same duty as a general contractor to an independent contractor's employee, cases considering the duties of each are used interchangeably. *McClure v. Denham*, 162 S.W.3d 346, 351, n.3 (Tex. App.—Fort Worth 2005, no pet.).

Worth 2005, no pet.). "A duty of care will arise only when such control is retained or actually exercised over the means, methods, or details of the independent contractor's work." *McClure*, 162 S.W.3d at 351. "Further, the control must relate to the activity that actually caused the injury." *Id*.

A.W. testified that the spillway was leaking. On behalf of the Homeowner's Association, he contacted Moss to repair the leak and, upon Billy Moss's request, contacted Bolton to perform the excavation work. Billy told A.W. that the spillway needed to be sealed. A.W. understood that Bolton was to dig around the spillway so that Moss could repair the leak. A.W. admitted that he is probably the person who told Moss to proceed with the work, but that Bolton dug the trench at Moss's direction and under Billy's instruction. In fact, A.W. once heard Billy telling Bolton to slope the walls.

Billy testified that he and the Bolton backhoe operator were in charge of the excavation. He explained that the operator digs the trench per Occupational Safety and Health Administration regulations. Billy testified that his superintendents are responsible for ensuring that the trench is dug properly. After Bolton dug the trench, Billy requested additional sloping of the trench walls. Billy recalled seeing A.W. at the site on one occasion, when Billy explained the procedure for repairing the leak. Billy testified that A.W. did not direct the job in any way and was not involved in discussions regarding the patch work. He did not recall any of the Hines Appellees directing Bolton's work. Moss employees are paid by Billy, directed by him, and answered to him. According to Billy, Moss and Bolton were free to perform their work as they saw fit. A.W. did not provide any tools or equipment. There was no written contract.

In his affidavit, Ibarra stated that Moss was hired to repair the leaking spillway and Bolton was hired to dig around the spillway. Ibarra stated that Nick Moss, Billy's son, was supervising. In his deposition testimony, Ibarra testified that after Nick checked over the site and left, he took over as supervisor. Ibarra admitted that he had no discussions with any of the Hines Appellees about beginning work and he never saw any of the Hines Appellees giving instructions. Rather, Nick communicated with the operator, instructing where to dig, whether the trench was deep enough, and whether the trench needed further work. Ibarra admitted that it was Nick's job to work with Bolton. He testified that Moss and Bolton had the expertise to perform the work, were responsible for the repairs, and used their own tools and equipment to do so.

The record does not suggest that the Hines Appellees contractually retained or physically exercised control over the excavation work performed by Bolton. The Hines Appellees, as either general contractor or occupier of the premises, owed no duty to Ibarra. For this reason, Ibarra and Torres cannot prevail on their negligence and gross negligence claims. *See Norton*, 2008 Tex. App. LEXIS 4706, at *5-6; *see also Belteton*, 222 S.W.3d at 605-07; *McClure*, 162 S.W.3d at 351-52.

### Premises Liability and Negligent Activity

There are two subcategories of premises liability: (1) "defects existing on the premises when the independent contractor/invitee entered," *i.e.*, premises defect; and (2) "defects the independent contractor created by its work activity," *i.e.*, negligent activity. *Coastal Marine Serv., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999); *Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 405-06 (Tex. App.—El Paso 2008, pet. denied).

Under subcategory one, there is "a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist." *Lawrence*, 988 S.W.2d at 225; *see Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). "[P]remises defects of this type are ones 'in which the danger did not arise through the work activity of the subcontractor/invitee.'" *Lawrence*, 988 S.W.2d at 225. "Only concealed hazards--dangerous in their own right and independent of action by another--that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects." *Id*.

Under subcategory two, there is "no duty to ensure that an independent contractor performs its work in a safe manner." *Id.*; *see Olivo*, 952 S.W.2d at 527. An exception exists where the premises owner/occupier or general contractor "retains the right of supervisory control over work on the premises." *Lawrence*, 988 S.W.2d at 225-26; *see Olivo*, 952 S.W.2d at 528. "The right to control must be more than a general right to order work to stop and start, or to inspect progress." *Lawrence*, 988 S.W.2d at 226. "The supervisory control must relate to the activity that actually caused the injury, and grant the owner [or general contractor] at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." *Id*.

The record in this case does not support a premises liability claim for either a premises defect or negligent activity. First, the record shows that the trench was not a concealed or preexisting condition. *See Lawrence*, 988 S.W.2d at 225. Billy testified that his superintendents are responsible for conducting daily inspections of the trench.

Superintends must look for shifting, cracking, settling, and pooling water. In his deposition testimony, Ibarra testified that he did not believe the trench was safe. Before entering the trench, he saw dirt fall into the trench and saw water pooling in the trench. He told Nick that the trench was dangerous, but Nick stated that other employees had worked in the trench the previous day and that the job needed to be completed quickly. Ibarra knew the walls of the trench were too steep. He explained that Bolton dug the walls of the trench too vertically and that no protection, such as an iron box to catch falling dirt or digging the walls of the trench diagonally to prevent falling dirt, was provided. Ibarra testified that an iron box or sloping makes the trench more secure and prevents the walls from caving in and causing an accident.

The evidence establishes that superintendents, like Ibarra, were charged with the responsibility of inspecting the trench for specific signs of danger. Assuming without deciding that the trench walls constituted a dangerous condition, the summary-judgment evidence conclusively establishes that such condition was an open and obvious defect that arose from the work of the independent contractors. *See Lawrence*, 988 S.W.2d at 225.

Second, as previously discussed, the record contains no evidence that any of the Hines Appellees exercised control over the excavation work that caused Ibarra's injury. Any right of control they may have had merely consisted of authorizing Moss to proceed with the work and did not involve directing the manner in which Moss repaired the leak or Bolton excavated the area. *See Lawrenc*e, 988 S.W.2d at 226; *see also Olivo*, 952 S.W.2d at 528.

In summary, we conclude that Ibarra and Torres cannot establish premises liability under either a premises defect or negligent activity theory.

## Negligent Hiring

"An employer who hires an independent contractor may be held responsible for his acts if the employer 'knew or should have known that the contractor was incompetent and a third person is injured because of such incompetency.'" *McClure*, 162 S.W.3d at 354. However, the employee of an independent contractor is not "considered a third party to whom such a duty is owed." *Id*. The person who hires the independent contractor is not "liable to an independent contractor's employee on the ground of negligent hiring." *Hagins v. E-Z Mart Stores, Inc.*, 128 S.W.3d 383, 393 (Tex. App.—Texarkana 2004, no pet.); *see McClure*, 162 S.W.3d at 355.

It is undisputed that A.W. hired Moss and Bolton. Because Ibarra is the employee of Moss, an independent contractor, the Hines Appellees are not liable to him for negligent hiring. *See Hagins*, 128 S.W.3d at 393; *see also McClure*, 162 S.W.3d at 354. Ibarra and Torres cannot prevail on their negligent hiring claim.

## Negligence *Per Se*

As part of establishing a negligence *per se* claim, a plaintiff must prove that the "defendant's act or omission is in violation of a statute or ordinance." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Ibarra and Torres allege violations of three statutes.

First, they rely on chapter 411 of the Labor Code. *See* TEX. LAB. CODE ANN. §§ 411.001 et. seq. (Vernon 2006) (worker's health and safety). However, chapter 411

applies to employers. *See Good v. Dow Chem. Co.*, 945 S.W.2d 877, 880 (Tex. App.—

Houston [1st Dist.] 1997, no pet.)[5]; *see also* TEX. LAB. CODE ANN. § 411.102(2)-(3) (Vernon

2006) (An "employee" "works for an employer for compensation" and an "employer"

"has control or custody of any employment, place of employment, or employee.").

Ibarra was employed by Moss, not the Hines Appellees. *See Good*, 945 S.W.2d at 880.

Second, Ibarra and Torres rely on section 22.02 of the Penal Code. *See* TEX. PEN.

CODE ANN. § 22.02 (Vernon Supp. 2009) (aggravated assault). "As a general rule, a

person has no legal duty to protect another from the criminal acts of a third person or

control the conduct of another." *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

"Similarly, a landowner has no duty to prevent criminal acts of third parties who are

---

[5]     *Good* cites to the prior version of the statute:

> "Employee" means an individual who works for an employer for wages, compensation, or other things of value.

> "Employer" means an individual…who has control or custody of any employment, place of employment or employee.

> "Place of Employment" means every place where, either temporarily or permanently, any trade, industry, or business is carried on or any employee is directly or indirectly employed by another for direct or indirect gain or profit.

Act of May 27, 1985, 69th Leg., R.S., ch. 931, 1985 Tex. Gen. Laws 3121, 3150-51, *repealed by* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.54, 1995 Tex. Gen. Laws 458, 656; *Good v. Dow Chem. Co.*, 945 S.W.2d 877, 879-80 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  These definitions were substantially unchanged when codified:

> "Employee" means an individual who works for an employer for compensation.

> "Employer" means a person who has control or custody of any employment, place of employment, or employee.

> "Place of employment" means a location, other than a private residence where domestic service is performed, where: (A) a trade, industry, or business is temporarily or permanently conducted; or (B) an employee is directly or indirectly employed by another for direct or indirect gain.

TEX. LAB. CODE ANN. § 411.102(2)-(4) (Vernon 2006).

not under the landowner's supervision or control." *Id*. The Hines Appellees exercised no supervision or control over the independent contractors; thus, they owed no duty to protect Ibarra from Bolton's actions. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21, 23 (Tex. 1993).

Finally, Ibarra and Torres assert violations of the Occupational Safety and Health Administration regulations. However, "regulations promulgated under the OSHA statute neither create an implied cause of action nor establish negligence per se." *McClure*, 162 S.W.3d at 353; *see Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 128-29 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Because none of the statutes relied on by Ibarra and Torres support their negligence *per se* claim, summary judgment was proper as to this claim.

### Negligent Undertaking

To establish a claim for a negligent undertaking, a plaintiff must show, in part, that the "defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection." *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). A negligent undertaking requires an affirmative act upon which reliance can be based. *Kirk v. Precis, Inc.*, No. 2-05-00297-CV, 2006 Tex. App. LEXIS 10635, at *20 (Tex. App.—Fort Worth Dec. 14, 2006, pet. denied) (mem. op.). The record does not indicate that the Hines Appellees undertook any affirmative act or undertook a duty to provide for Ibarra's protection. *See Torrington*, 46 S.W.3d at 837-39. In fact, it is the Hines Appellees' failure

to act on which Ibarra's claim is based.  For this reason, Ibarra and Torres cannot prevail on their claim for negligent undertaking.

In summary, we cannot say that Ibarra and Torres have raised a fact issue as to whether the Hines Appellees committed negligence, negligence *per se*, negligent activity, premises defect, negligent hiring, gross negligence, or negligent undertaking. We overrule issue two.

## CONCLUSION

Having overruled Ibarra's and Torres's two issues, we affirm the trial court's judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Judge Pozza[6]
     (Chief Justice Gray concurring)
Affirmed
Opinion delivered and filed July 21, 2010
[CV06]

---

[6]     The Honorable Karen H. Pozza, Judge of the 407th District Court, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).